UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                CASE NO. 8:17-cr-398-T-30MAP

JEFFERSON CASTILLO,

    Defendant.
_____/

**DEFENDANT JEFFERSON CASTILLO'S
SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD
VARIANCE FROM THE OTHERWISE APPLICABLE GUIDELINE RANGE**

    The defendant, Jefferson Castillo, by and through the undersigned counsel, hereby files his sentencing memorandum to assist the Court in fashioning an appropriate sentence in this case. In this memorandum, the defendant will address the outstanding objection to the application of the United States Sentencing Guidelines and move the Court for a downward variance from the otherwise applicable advisory guideline range.

Background

    Mr. Jefferson Castillo is a 26-year-old man from Colombia. On October 30, 2017 Mr. Castillo pled guilty to conspiracy with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States and possession of cocaine with intent to distribute while aboard a vessel subject to the jurisdiction of the United States and also pled guilty to possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States. (PSR ¶¶ 2,3 and 6). Level 35 criminal history category one corresponding to an advisory guideline range of 168-210 months. (PSR ¶¶ 31,37 and 76).

I.  *Outstanding Objections to Presentence Report*

The one outstanding objection to the presentence report failed to recognize Mr. Castillo is entitled to a role reduction pursuant to U.S.S.G. § 3B1.2.

   a. <u>Specific Sentencing Characteristics Pursuant to U.S.S.G. § 3B1.2</u>

   Mr. Castillo is entitled to a reduction for his role in the offense pursuant to U.S.S.G § 3B1.2, which states:

> §3B1.2. Mitigating Role
> Based on the defendant's role in the offense, decrease the offense level as follows:
> (a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> (b)  If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by 3 levels.

Application note 3(A) of section 3B1.2 states in part:

> A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

Mr. Castillo was aboard a small vessel that was transporting cocaine. He did not produce or own the cocaine on the vessel nor did he did he in anyway plan the transportation. Mr. Castillo was involved in the conspiracy for less than a week prior to being placed on a vessel. Although he was the captain of the vessel he was not armed.

The Eleventh Circuit Court of Appeals recently addressed mitigating role

adjustments in large quantity drug cases in *United States v. Carlington Cruickshank* 837 F. 3d. 1182, (11th Cir. 2016). The *Cruickshank* court clarified the Eleventh Circuit's prior ruling in *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) which held U.S.S.G. § 3B1.2 does not automatically preclude a defendant from being considered for a mitigating role adjustment in a case in which the defendant is held accountable under § 1B1.3 solely for the amount of drugs the defendant personally handled. Apparently, some courts were under the belief that possession of a large quantity of drugs precluded a defendant from receiving a mitigating role adjustment. In *Cruickshank,* the court reiterated its' position in *De Varon* that "the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense." *Cruickshank, Id.* at 1193, *citing De Varon,* at 943.

The *Cruickshank* court also noted the Sentencing Commission, through Amendment 635 to the Sentencing Guidelines, adopted amendments to the Sentencing Guidelines further clarify the factors for a court to consider for a minor-role adjustment, and, in doing so, still continue to embrace the approach the Eleventh Circuit took in *De Varon*. *Id.* at 1194. In November 2015, the Commission added the following language to Application Note 3(C) for § 3B1.2:

> In determining whether [a defendant warrants a minimal or minor participant] or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)  the degree to which the defendant exercised decision- making authority or influenced the exercise of decision- making authority;

(iv)  the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

Applying the criteria to Mr. Castillo a role reduction is warranted. Mr. Castillo qualifies under the criteria:

> 1. The degree to which the defendant understood
> the scope and structure of the criminal activity

Mr. Castillo is unaware of the scope or structure of the criminal activity. He does not know the owner of the cocaine, who the cocaine was going to or, the scope and structure of the organization.

> 2. The degree to which the defendant participated
> in planning or organizing the criminal activity

Mr. Castillo did not participate in the planning or organizing the criminal activity. He was told to get on a boat that was already loaded and to take the boat to a location. He did not plan or organize the offense. In fact, Mr. Castillo was left in the dark about most of the planning of the criminal activity.

> 3.  The degree to which the defendant
> exercised decision-making authority

Mr. Castillo did not have decision-making authority. His role was to assist in transporting the load to a location at sea. He had not authority or opportunity to make decisions.

> 4. The nature and extent of the defendant's
> participation in the commission of the criminal activity

Mr. Castillo's sole participation was transport the load to a point in the sea. He

was not aware of any other participants, where the cocaine came from or where it was going to or who was receiving the cocaine.

### 5. The degree to which the defendant stood to benefit from the criminal activity

Mr. Castillo was being paid his involvement, however, the pay was not where close to the value of the cargo, Mr. Castillo was not benefiting substantially in relation to the other (uncharged) participants in the offense.

The defendant bears the burden of proving by a preponderance of the evidence his entitlement to a role reduction. *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc). The facts of this case are different than those in *De Varon*. In this case the defendant had a small role in the large drug conspiracy. This case is far larger than three guys on a boat in the sea with cocaine. The exact size will most likely be known in the future. At that time the government will issue a press announcement trumpeting the prosecutions of drug smugglers on conspiracy charges as the government has in the past.[1]

Exhibits A through D are some examples of press releases issued by the United States Attorneys Office of the Middle District of Florida following the unsealing of prosecution of the conspirators responsible for the cocaine shipments often involving vessel with occupants prosecuted sometimes years earlier. These are cases where the

---

[1] See Exhibits A and B, press releases for *U.S. v. Camilo Torres-Martinez* 8:08-cr-00344-SDM-AAS, defendant ultimately sentenced to 151 months then 97 months after rule 35; Exhibit C, press release for *U. S. v. Francisco Heleno Jaramillo* 8:14-cr-00216-JSM-AAS, defendant ultimately sentenced to 180 months and Exhibit D, press release for *U.S. v. Richard Mosquera Mosquera* 8:13-cr-00299-RAL-AEP, defendant ultimately sentenced to 135 months.

individuals responsible for cultivating, producing, transporting and selling the cocaine are prosecuted. In those cases the individuals are generally charged with one large conspiracy count for all of the cocaine transportation activities in which they participated. In some of the press releases the government identifies the actual vessels used by the conspiracy. The press releases and charges of the second tier defendants don't make sense in light of the position that Mr. Castillo is not entitle to a role reduction. The government in their Indictments and press releases takes the position in second tier defendant cases that it is one long conspiracy over the course of years involving multiple vessels. Under that analysis Mr. Castillo was a minor part of a much larger conspiracy.

Through years of experience the government is well aware that others are behind this shipment. The government most likely knows the organization and the parties responsible for the shipment. The addendum to the presentence report incorrectly concludes, "the only three participants who are identifiable or discernable from the evidence are the defendant, John Jair Riascos and Arles Tenorio Rentaria." PSR Addendum page 2. In fact, the Grand Jury found evidence others were involved in the conspiracy beyond the three defendants. The Indictment alleges the three defendants "did knowingly and willfully combined, conspire and **agree with each other and with persons both known and unknown to the Grand Jury** to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine". **(**See Doc. 1 Indictment Count 1). Similarly in Count two of the Indictment the Grand Jury found the three defendants "did knowingly and intentionally, while **aiding and abetting each other and other persons both known and unknown to the Grand Jury**, possess with intent to distribute five (5) Kilograms or more of a mixture

or substance containing a detectable amount of cocaine a scheduled II controlled substance. **(**See Doc. 1 Indictment Count 2). Clearly, evidence was presented to the Grand Jury allowing them to find other participants in the offense, some of participants were identified to the Grand Jury.

Applying these principles to the guideline analysis Mr. Castillo qualifies for a role reduction in the criminal activity pursuant to U.S.S.G. §1B1.2 and he is entitled to a sentence reduction. Pursuant to §2D1.1(5) Mr. Castillo's base offense level should be decreased to level 32. [2] This would change his total offense level to 27 corresponding to an advisory guideline range of 70-87 months.

II. *Motion for a Downward Variance from the Advisory Guidelines Range*

Mr. Castillo request a variance from the otherwise applicable advisory guideline range based on his personal history, his role in the offense, the rote but nonsensical application of the pilot enhancement and, finally, the need to avoid unwarranted sentencing disparity.

<u>Variance</u>

The Eleventh Circuit recently reemphasized the wide discretion district courts enjoy in determining whether variances are appropriate. *See United States v. Rosales-Bruno,* 789 F. 3d 1249 (11th Cir. 2015). Although district courts must consider all

---

[2] A district court may reduce a defendant's base offense level by two levels if it finds that the defendant was a "minor participant" in the criminal activity. U.S.S.G. § 3B1.2(b). If the court grants such a reduction in a drug case with a base offense level of 38 defendant's base offense level is decreased by a further four levels, for a total of six levels. *Id.* § 2D1.1(a)(5).

available § 3553(a) factors, they need not give all the factors equal weight. *Id. at 1254.* (Citation omitted). "Instead, the sentencing court 'is permitted to attach "great weight" to one factor over others.'" *Id., quoting Gall v. United States,* 552 U.S. 38, 57 (2007). Likewise, although district courts must consider the advisory guidelines range, "it is only one of a dozen or so factors that the court must take into account." *Id.* at 20 (citation omitted). Moreover, "The Supreme Court has been clear that "[t]he Guidelines are not the only consideration…. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider all of the §3553 factors to determine whether they support the sentence requested by a party.'" *Id., quoting Gall,* 552 U. S. at 50. In fact, "[n]othing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors." *Id.*

As the Eleventh Circuit emphasized, "When it comes to sentencing, particularized facts about the defendant matter." *Id.* at 1259. The *Rosales-Bruno* court noted that the *Gall* Court's finding that the "'unique facts' of the defendant's situation" supported the downward variance. *Id., citing Gall,* 552 U.S. at 54. "In assigning weight to the § 3553 factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts." *Id.* at 1260. The Eleventh Circuit reiterated, "'it is within the district court's discretion to decide how much weight to give each § 3553(a) factor.'" *Id.* at 26 (quotation omitted). Moreover, "'No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court … may receive and consider for the purpose of imposing an appropriate sentence.'" *Id., quoting* 18 U.S.C. § 3661. It is within the court's discretion to decide

how much weight to give each §3553 factor, and the court is permitted to "attach great weight to one factor over others.'" *Id.* at 1261 (quotation and citation omitted). A sentence's variance outside the guidelines range, whether upward or downward, represents a district court's judgment that the combined force of the other § 3553(a) factors are entitled to greater weight than the guidelines range.

a. Individual Defendant Characteristics

The particularized facts about Mr. Castillo matter and these facts warrant a variance from the otherwise applicable guideline range. Mr. Castillo and his family live in Cali, Colombia. In Colombia it was difficult for Mr. Castillo to support his family. Although he worked hard, he made very little money as a fisherman. It was often difficult to get a position on a fishing vessel, as it is very competitive to actual get a spot on the vessel. At the time of the commission of the offense he and his family were in a troublesome financial position. While not an excuse, Mr. Castillo's financial position and his desire to provide for his family led him to commit this offense. Mr. Castillo is anxious to use his time in federal prison wisely. He wants to study the English language and leave the prison system fluent in English. He is optimistic this education will open up greater employment possibilities and ensure he won't be in dire financial circumstances again.

b. Two level enhancement pursuant to USSG §2D1.1(b)(3)(C)

While the two level enhancement pursuant to USSG §2D1.1(b)(3)(C) for bing the pilot was appropriately applied, the specific facts and circumstances of the enhancement in this case merit that it should be retracted through a two level downward variance. In *U.S. v. Guerrero*, 114 F.3d 332 (C.A. 1(Puerto Rico) 1997) defendant Rivas objected to his enhancement for his status as pilot because he did not possess any special skills and

he had no authority over the other crewmembers and took care of the helm for four hours. *Id.* at 346 and footnote 15. The court analyzed the level of sophistication associated with the enhancement for pilot under USSG §2D1.1(b)(3)(C) and stated:

> The sentencing guideline does not define the word "pilot," and our research has not revealed any case law to inform our inquiry. Nevertheless, the common dictionary definition of "pilot" includes a person hired to steer a vessel. See, e.g., Webster's Third New International Dictionary of the English Language 1716 (1986) (defining "pilot," inter alia, as "one employed to steer a ship: helmsman"). While the act of steering a forty-foot vessel on the high seas may or may not involve a skill obtained through extensive maritime training, we cannot say that the district court committed plain error in finding that Rivas "acted as a pilot" aboard the boat within the meaning of U.S.S.G. § 2D1.1(b)(2)(B). Furthermore, we disagree with Rivas' contention that the guideline applies only to those with special command in a criminal enterprise. While the guideline may speak to a defendant's control over some mechanical aspect of a vessel's operation, <u>it does not address the defendant's authority over other individuals involved in a criminal venture</u>.

At 346. (Emphasis added).

While Mr. Castillo's actions qualify him for the enhancement under the guidelines the defendant requests the court consider the standard for the two level enhancement and the facts and circumstances which the defendant believes shows that the enhancement should be retracted through a variance. The enhancement is very broad and does accurately reflect the factual circumstances of the case. The vessel (Attached Exhibit E) is a small vessel that virtually any person could pilot. The pilot's role was merely to go to a spot in the ocean to meet another vessel. In fact, the length of the journey necessitates other persons taking the helm so the driver of the boat could rest. As recognized by the *Guerrero* court the enhancement applies to a defendant acting as a pilot, it does not require special skill nor does it necessitate supervising any other members of the conspiracy. Under the facts and circumstances of this case a variance is appropriate to balance out the inequity of the pilot enhancement as to Mr. Castillo. "<u>In assigning weight

to the § 3553 factors as part of the weighing process, a court may (and should) consider <u>individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts</u>." *Rosales-Bruno* at 1260. (Emphasis added). In this case the pilot enhancement is merely a "guideline label" and the court should grant a downward variance of two levels in order to overcome the pilot enhancement.

c. Need to Avoid Unwarranted Sentencing Disparity

Mr. Castillo as presently calculated advisory guideline range is 168-210 months in prison. Exhibits A-D are press releases by the United States Attorney's Office touting prosecutions of persons responsible for multiple shipments of cocaine and, in all likelihood, profiting multiple millions of dollars with each shipment. The sentences are somewhat difficult to contrast due to sealed document filings however, as noted in footnote 1 the defendants responsible for sending multiple vessels loaded with cocaine over periods of years received sentences of 180 months, 97 months and 135 months in prison. Mr. Castillo's advisory guideline range is disproportionally severe compared to far more involved and culpable individuals.

Conclusion

Mr. Castillo is a good candidate for rehabilitation and very unlikely to reoffend. He was a hard working person in Colombia and he will continue to work hard after his release from prison. At the sentencing hearing, the defendant will request the Court to vary from the otherwise applicable guideline range.

Respectfully submitted,

FARMER & FITZGERALD, P.A.

*Timothy J. Fitzgerald*

Timothy J. Fitzgerald, Esq.<br>
FL Bar No. 0780618<br>
400 N. Tampa St. Suite 950<br>
Tampa, FL 33602<br>
(813) 228-0095<br>
FAX (813) 224-0269<br>
fflawpafedtjf@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing has been furnished by em/ecf on January 13, 2018 to the following:

AUSA Francis Murray  
Office of the U.S. Attorney  
400 North Tampa Street  
Suite 3200  
Tampa, FL  33602

Danny Castillo, Esq.  
Frank Zaremba, Esq. AFPD